O'BANNON v. ROPER.

**Bills — Notes — Last Indorser.**

    According to commercial and banking usages the last indorser has the right to check for proceeds of a bill of exchange.

APPEAL FROM JEFFERSON CIRCUIT COURT, LOUISVILLE CHANCERY.

January 2, 1861.

OPINION BY THE COURT:

The alleged error of $42.86 to the prejudice of appellant does not exist. He is charged with $1,517, the amount of the Lytle bill in renewal, and is credited by precisely the like amount; the

two entries balance, as they should do, and furnish no ground of complaint.

In regard to the charge of $520, the draft of Clogett, O'Bannon & Honore, it is only necessary to inquire who received the proceeds of the bill which was intended to meet the Sharpe debt. If Roper or Roper & Bashaw received the amount of the bill which was designed to pay Sharpe, and which was discounted in October, 1855, by Tucker, Brannin & Co., then they were indebted to Clogett, O'Bannon & Honore for that sum, and it was their duty to meet the draft of $520 in question. If, on the other hand, O'Bannon, a partner of the firm that owed Sharpe, received the money in October from Ellwang, the clerk of Tucker, Brannin & Co., it is plain that they had no funds in Roper's hands upon which to draw, and that the sum which he paid on their sight draft should be refunded to him.

The only witness who pretends to say that O'Bannon received the money in October is Ellwang, the clerk of Tucker, Brannin & Co. His statements are not made from his own recollection of facts, but, as he says, founded upon the entries in the books of the banking-house. Who made the entries does not appear.

And when we consider the testimony of F. L. Honore and Clogett, and all the circumstances attending the transaction, it seems impossible to avail the conclusion that Roper or Roper & Bashaw received the money in October, 1855, and not O'Bannon.

In the first place Roper & Bashaw were the last indorsers upon the bill. They and they alone, according to commercial and banking usage, had the right to check for its proceeds. And it is singular that neither their check nor that of O'Bannon is produced to show who drew the money, or for whose benefit it was drawn. Again, it is equally strange that Roper, who had then dissolved with O'Bannon, should honor and pay the sight draft of Honore, Clogett & O'Bannon for $520, without either being indebted to said firm or having funds on hand to reimburse him for such advance.

The very fact that he did promptly pay the bill of itself creates the presumption that the drawers had provided funds for the same, or that the drawee was indebted to them in the sum drawn for and had agreed to pay it.

But it is not necessary to resort to these presumptions to show that he was thus indebted to the firm. Francis L. Honore proves

that Roper, in a correspondence with O'Bannon in regard to this very matter in which the latter was endeavoring to get Roper to refund the proceeds of the bill of October, 1855, consented, finally, that O'Bannon should drawn on him for the amount and that he, Roper, would pay it.

In our judgment the commissioner should have rejected this charge of $520 made against the appellant, and the court erred in not sustaining his exception to the same.

As to the other matters complained of, we deem it unnecessary to notice them in detail. The several items excepted to, together with the evidence in relation to each, have been carefully examined and considered, and we have no hesitation in approving of the conclusion of the commission in regard to them and the action of the court in overruling the exceptions.

For the error mentioned the judgment is reversed, and cause remanded, with directions to amend the same by striking out the item of $520, charged against appellant. The judgment in other respects is not disturbed but approved of affirmance.